Nov. Term, 1851.

PHILIPS
v.
DOE.

*J. S. Newman,* for the defendant.

---

### PHILIPS *v.* DOE on the Demise of TUCKER.

A lease of land contained an agreement that the lessee should pay a specified rent, at periods stated, and should he, at any time during the term, neglect or refuse to pay the rent when due, he thereby authorized the lessor to re-enter upon and take possession of the premises, without hindrance. *Held,* that to work a forfeiture of the lease for the non-payment of rent, a demand of the rent should have been made on the premises, just before sun-set of the day when it became due.

On this point, the R. S. 1843 have not changed the common law.

The lease contained a covenant that no wheat, &c., or other article, used or growing on the premises, should be taken off until the full amount of the rent coming to the lessor had been paid. *Held*, that a breach of this covenant did not work a forfeiture of the lease.

It is not error for the Court to refuse to give an irrelevant instruction to the jury.

Nov. Term,
1851.
——
PHILIPS
v.
DOE.

ERROR to the *Cass* Circuit Court.

Saturday,
November 29.

PERKINS, J.—Ejectment by *Doe* on the demise of *Tucker* against *Philips*. Recovery by the plaintiff below.

The facts are that, on the 19th day of *August*, 1847, *William Brown*, then the owner of the land hereinafter described, being that involved in this suit, leased it to *James Tucker*, by an instrument, among other things, witnessing: " That the said *Tucker*, on his part, for the considerations hereinafter mentioned, agrees and obligates himself to the said *Brown*, his heirs, &c., to clear, in a good farmer-like manner, fit for plowing, a certain piece of ground on the farm lately owned by *W. F. Rowan*, estimated to be about 20 acres, now inclosed with a fence. Also, another piece of ground, to be cleared in like manner, on said farm, estimated to contain three or four acres, not inclosed. This last named piece to be inclosed by moving one end of the fence to the side," &c. Then follow certain specifications as to the manner in which said *Tucker* was to manage and improve the farm, and a statement that he was to pay rent. The instrument proceeds: " The first payment to be made by said *Tucker* shall be on or before the 1st day of *January*, 1849, at the rate of two dollars for each acre cleared on said premises, and so on annually during the time said *Tucker* may have possession thereof. The time hereby leased or rented is five years from and after the first day of *January* next, (1848,) unless sooner discharged from said premises. For the above-mentioned clearing, making rails and repairing fences, cutting down and burning up trees and fallen timber, making ditches, &c., the said *Brown* hereby agrees to pay to said *Tucker* 130 dollars, which is in full for all the above-mentioned work; payment to be made as soon as said clearing and fencing are

done. No wheat, corn, hay, or other article, used or growing on said premises, shall be taken off the same until the full amount of rent coming to said *Brown* is paid. The number of acres to be cleared, as above mentioned, to be mutually ascertained by the parties, when the same is finished. The clearing above mentioned to be added to the cleared land, and two dollars paid to said *Brown* for each acre annually, by the 1st day of *January*, 1849. The total number of acres, by estimate, including that to be cleared, is between 55 and 60 acres. It is also further agreed by the said *Tucker*, that, if said *Tucker* shall, at any time during the five years above mentioned, neglect or refuse to pay the rent when due, viz: two dollars for each and every acre cleared on said premises, the said *Brown* is hereby permitted, and the said *Tucker* hereby authorizes the said *Brown*, to re-enter on said premises, and take possession of the whole of them, without any hindrance whatever," &c. (Signed,) "*James Tucker*, [seal]. *W. Brown*, [seal]."

*Tucker* entered into possession, but did not move his family on to the place. He failed to pay the rent due on the 1st of *January*, 1849, but it was not, on that day, demanded of him, nor was it ever demanded on the premises. In the spring of 1849, *Tucker* sub-leased the house and garden on said farm to *Jacob Richardson* till the 1st of *October* following. On the 26th of *April*, 1849, being after *Tucker's* lease to *Richardson*, *Brown* sold the land to *Philips*, giving him a bond for the conveyance to him of the title, on his payment of the purchase-money at a future day. Soon after this purchase by *Philips*, he bought *Richardson's* lease on the house and garden from *Tucker*, and took possession of them and the farm. Thereupon *Tucker* brought his ejectment; and on the trial the Court instructed the jury:

1. "That in order to work a forfeiture of the lease for the non-payment of rent, it was necessary that *Brown* should demand the amount of the rent due, on the premises, on the day it fell due."

This was right. Ad. Eject. 160. On this point, our

statute has not altered the common law. The demand should have been made just before sun-set. *Jackson* v. *Harrison*, 17 John. 66 (1).

2. "That the removal by *Tucker* of the hay, grain, &c., from the premises, before the payment of the rent, did not work a forfeiture of the lease."

If the provision in the lease prohibiting the removal of the hay, &c., was simply a covenant, as it is not declared in the lease that the breach of said covenant shall work a forfeiture, or give a right of re-entry, no such consequence would follow its breach, and the instruction was right.

If, however, that provision constituted a condition, a breach of which determined the lease, the instruction was wrong. In Coke upon Littleton 204, *a*, in the observation upon section 330, it is said: "Hereby it is evident, that some words of themselves do make a condition, and some other (whereof our author here, and in the next section, putteth an example,) do not of themselves make a condition without a conclusion and cause of re-entrie." If, in the present case, the language in the instrument had been, "*Provided*, and the lease is upon this condition, that if the hay, &c., shall be removed before, &c., said lease shall determine," &c., it would have been clearly enough a condition. But, as it is, we think the provision a covenant, and not a condition; that the lease was not forfeited by its breach; and that the instruction was correct. See *Jackson* v. *Harrison, supra.*—4 Kent's Comm. 123.—*Jackson* v. *Allen*, 3 Cowen, 220.—*Clark* v. *Jones*, 1 Denio, 516.

The Court refused instructions asserting doctrines contrary to those contained in the instructions given. We need not notice them. The Court also refused to give this instruction :

" When the lessor has recovered possession of the premises, a Court of Equity will not grant relief, if such recovery was on account of the non-payment of rent. Ad. on Eject. 171."

We do not see its relevancy.

Nov. Term,
1851.

Philips
v.
Doe.

The plaintiff below recovered the farm, but not the house and garden; and it is contended that the evidence is the same in relation to the former as to the latter, and that if he had not a right to the possession of the house and garden, neither had he to that of the farm. But the witnesses say he had leased the house and garden to *Richardson*, and thus deprived himself of the right of possession of them, for a term extending beyond the time when this suit was commenced. They do not say he had leased the farm.

*Per Curiam.*—The judgment is affirmed with costs.

*W. Wright*, for the plaintiff.

*D. D. Pratt*, for the defendant.

(1) Where the landlord is about to enter for a forfeiture for the non-payment of rent, the common law required a previous demand of the rent due, with circumstances of great particularity. On the very day upon which the rent becomes due, at a convenient time, before sun-set, the lessor must make an actual demand of the exact amount of the rent due, at the particular place at which the rent may be made payable by the terms of the lease; or, if there be no place stipulated in the lease, then at the most notorious place upon the land demised, which, if there be a dwelling-house, is the front door. But if the lessee, at any time of the day upon which the rent becomes due, meet the lessor on or off the lands demised, and tender the rent, the forfeiture will be saved; so that the lessor cannot put his right in force until after the expiration of that day. Comyn on Landlord and Tenant, 327.—Gilbert on Rents, 88.

But where a forfeiture of the estate, and an entry for the forfeiture, is stipulated for in the lease, in case of the non-payment of rent at the regular days of payment, the right of entry is deemed, in *Equity*, to be intended as a mere security for the rent, and the lessee will be relieved from the forfeiture upon the payment of the rent and any damage the lessor may have sustained by his neglect. Courts of law have also interfered in the tenant's behalf, under such circumstances. Comyn on Landlord and Tenant, 565.—Greenl. Cruise on Real Property, 2d vol., p. 31.—2 Story's Eq. Ju., ss. 1314, 1315. Equity will, also, relieve against a penalty for a breach of a covenant contained in the lease, by granting an injunction upon proceedings instituted at law to recover it; and if the penalty is to secure the payment of money, it will relieve the lessee upon his paying the principal and interest; and where the penalty is to secure a collateral act or undertaking, will direct an issue of *quantum damnificatus*, and compel the lessor to take only so much as amounts to a compensation for the breach of the covenant. Com. on Land. and Ten. 571.—2 Story's Eq. Ju., ss. 1314, 1315.

The law does not favor *forfeitures* of estates, and strict proof of a breach of a condition or covenant working a forfeiture of a lease, is always required. Addison on Cont. 657.